## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **ROBERT WHITE**, on behalf of himself and a class of those similarly situated,<br>   *Plaintiff*<br><br>   **v.**<br><br>**PATRIOT ERECTORS LLC**,<br>   *Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    Case No. 1:20-CV-00884-SH |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a bench trial in this case on February 6 and 7, 2023. Plaintiff Robert White appeared in person and through counsel, and Defendant Patriot Erectors LLC appeared through counsel. The parties submitted proposed findings of fact and conclusions of law on March 20, 2023, followed by response and reply briefs. Having carefully considered the parties' briefs, admitted exhibits, arguments of counsel, applicable law, and the entire record, the Court makes the following findings of fact and conclusions of law.[1]

### I. Jurisdiction

The Court has subject matter jurisdiction over this cause because White's claims arise under the laws of the United States. 28 U.S.C. § 1331; 29 U.S.C. § 216(b).

### II. Background

White alleges that Patriot, a commercial steel erection business, did not pay him overtime required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Although styled as a collective action, the claims tried pertain only to White, Patriot's former production manager.

---

[1] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

1

## III. Legal Standards

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee bringing an action for unpaid overtime compensation bears the burden to demonstrate by a preponderance of the evidence (1) that an employer-employee relationship existed during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019).

Patriot admits the first two elements of White's unpaid overtime claim: that it employed White and was an enterprise engaged in interstate commerce. Dkt. 11 ¶¶ 5-6. White thus has the burden to show that Patriot violated the FLSA's overtime wage requirements and the amount of overtime compensation he is due.

First, White must show that he performed work for which he was not compensated. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). To make a prima facie case that Patriot violated the FLSA's overtime wage requirements, White must present evidence (1) that he worked overtime hours without receiving compensation; (2) establishing the actual amount of hours and the nature of the work; and (3) that Patriot knew he was working and not being compensated for that work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). The burden then shifts to Patriot "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. If Patriot fails to produce such evidence, the Court may award damages to White even though the result may be only approximate. *Id.*

An employer who knows an employee is working overtime cannot allow the employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. *Harvill*, 433 F.3d at 441; *see also Arnett v. Sears, Roebuck & Co.*, No. SA-12-CA-488-XR, 2013 WL 3324070, at *4 (W.D. Tex. July 1, 2013) (stating that employee's failure to exhaust any internal company time correction policy does not bar recovery where employer was on notice of employee's unreported work); 29 C.F.R. §§ 785.11-785.13:

> EMPLOYEES "SUFFERED OR PERMITTED" TO WORK
>
> **General.** Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.
>
> **Work performed away from the premises or job site.** The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.
>
> **Duty of management.** In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

(citations omitted).

An employee cannot prevail on an FLSA overtime claim if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 (5th Cir. 2016). Therefore, White must provide direct evidence of actual or constructive knowledge to trigger Patriot's duty to pay him for time he did not report. *Kirby v. Sw. Bell Tel., L.P.*, No. SA-20-CV-00683-JKP, 2022 WL 545068, at *5 (W.D. Tex. Feb. 22, 2022). An employer has constructive knowledge of an employee's overtime work if it would have become aware of that work through reasonable

diligence. *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 647 (W.D. Tex. 2010) (quoting *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (per curiam)); *see also Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (acknowledging that employee would not be estopped from claiming additional overtime if the court found employer knew or had reason to believe reported information was inaccurate).

## IV. Findings of Fact

The Court finds the following relevant to White's claim by a preponderance of the evidence:

### A. White Worked Overtime Hours Without Compensation

White managed Patriot's steel fabrication shop. Transcript Vol. 1 (Dkt. 74) at 33:3-34:6, 160:17-19. It is undisputed that he was a non-exempt, hourly employee. *Id.* at 161:22-162:3. He did not have an assigned shift, but typically worked at Patriot's facility from 6 a.m. to 6 p.m. or 6:30 p.m. *Id.* at 168:1-4; Transcript Vol. 2 (Dkt. 75) at 52:11-53:13. White supervised time submission by others, but received no training in wage and hour laws. Dkt. 74 at 76:13-25; Dkt. 75 at 33:13-20, 81:10-23.

While White was production manager, Patriot started a new night shift, partly to handle "hot work" that came in late in the afternoon and needed to be done by the next day. Dkt. 74 at 163:10-164:18. During the seven-plus years White was Patriot's production manager, the number of employees in the shop he supervised increased from 30 to 120. *Id.* at 162:11-163:9.

White recorded all hours he worked at the Patriot facility on his desktop computer and was paid for them. *Id.* at 169:23-170:8. He submitted and was paid for many hours of overtime, including more than 1,200 hours in 2019 and nearly 1,060 hours in 2018. But White's time records do not include any hours he worked at home or outside the Patriot facility. *Id.* at 170:16-20. After he left for the day, he often answered calls from Patriot's night shift supervisors during his one-hour drive home. *Id.* at 170:21-172:10, 217:7-11. He also answered work-related phone calls and

4

emails while at home at night. *Id.* at 171:8-13, 173:5-177:15; *see also* Dkt. 75 at 104:16-18 (Eric Herzog knew White sometimes sent emails from home). White did not know Patriot was required to compensate employees for work done outside the facility. Dkt. 75 at 79:16-21.

Based on this evidence, the Court finds that White established at trial that he worked overtime hours without receiving compensation.

### B. Just and Reasonable Inference as to Hours and Nature of the Work

Next, White must present evidence showing the actual amount of uncompensated hours and the nature of the work. *Mt. Clemens*, 328 U.S. at 686-87. White did not track the time he worked outside of his recorded clock-in and clock-out time. Dkt. 74 at 247:18-249:25.

White testified that he used his Patriot-issued phone to perform much of his off-the-clock work. He requested records from that phone in discovery, but Patriot did not produce them. Plaintiff's Exh. 74, Request No. 34, Dkt. 72-5 at 52-53. White also requested his email, but Patriot produced no emails White sent after August 2018, that is, for the final fourteen months of his employment, when his workload increased. Dkt. 74 at 210:3-16; Dkt. 75 at 119:3-8, 120:10-16. Long after discovery closed, Patriot did produce emails sent by White from the mailboxes of other employees, but White testified that they appeared to be incomplete. Dkt. 74 at 206:21-207:12. He provided representative examples of work performed off the clock in March and April 2018. Plaintiff's Exhs. 1-2, 4-5, Dkt. 72-1 at 1-22, 29-46; Defendant's Exh. 57A, Dkt. 73-2 at 245-47.

Under *Mt. Clemens*,

> if the employer's records are inaccurate or inadequate, a plaintiff need only show by just and reasonable inference that she was an employee, worked the hours, and wasn't paid. It's a lenient standard rooted in the view that an employer shouldn't benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable.

*U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 439-40 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1667 (2022) (quotation marks omitted).

Patriot was in the position "to produce the most probative facts concerning the nature and amount of work performed." *Mt. Clemens*, 328 U.S. at 687. Because Patriot did not produce any records from the phone it issued to White or all emails he sent for the last year of his employment, the Court finds that Patriot's records are inadequate and White may show by "just and reasonable inference" the hours he worked. *Id.*

Based on his recollection of his work performed after he clocked out and left Patriot's facility, White estimated that he worked at least eight hours each week off-the-clock, which he testified is a "very, very conservative and very, very fair" estimate. Dkt. 74 at 207:19-208:8. Considering White's testimony and the totality of the evidence at trial, the Court concludes that White's estimate that he worked eight hours per week remotely and off-the-clock is a just and reasonable inference of his actual hours worked.

## C. Patriot Knew White Worked Off-the-Clock Without Compensation

The Court also finds that Patriot had actual as well as constructive knowledge of his uncompensated work, satisfying the last element of his prima facie case.

### 1. Actual Knowledge

White testified that "all upper management knew" he worked off-the-clock, *id.* at 213:20-22, which he considered to be Patriot's corporate culture – the "Patriot way." *E.g.*, *id.* at 215:2-4; Dkt. 75 at 82:16-24, 124:3-12. White and supervisor Eric Herzog both testified that they talked about the fact that White worked off-the-clock without compensation, although Herzog remembers only one such conversation. Dkt. 74 at 212:17-214:1, 239:8-21; Dkt. 75 at 94:4-17. Herzog testified White "made a comment that, 'Well, I don't even report all my overtime.' And I told him, 'Well, if you don't have -- you need to report all the time that you work.' But our conversation was more about the amount of time he was working." Dkt. 75 at 94:14-17. Herzog did not remember when the conversation occurred and took no action on White's off-the-clock work:

> Q. So, as a manager at Patriot, you knew at some point when you had this conversation with Robert that he had worked hours that he hadn't been compensated for, right?
>
> A. Yes.
>
> Q. Okay. And you didn't do anything except tell Robert to enter his time to make sure that he got paid for those hours; is that right?
>
> A. I told him to report his time, yes.
>
> Q. Okay. And did you do anything else to ensure that he was paid for those hours that he claimed not to have been paid for?
>
> A. Not that I remember.

*Id.* at 102:10-20.

White testified that he spoke with Herzog about the issue more than once and that Herzog never told him he needed to get paid for his work away from the facility:

> I know for a fact that he knew very well, we would talk about it, we'd commiserate about being Patriot lifers. And he knew very well that I worked beyond the clock in at the facility and the clock out at the facility. And he did not talk to me about needing to get paid for that.

Dkt. 74 at 239:17-21.

> Q. You heard [Herzog] say that you had told him at some point that you worked off the clock without pay; is that right?
>
> A. That is correct.
>
> Q. And you did tell him that, right?
>
> A. Yes.
>
> Q. He said there was -- he just remembered one conversation where you-all talked about that, right?
>
> A. That is correct. That he recalled.
>
> Q. Right. Do you recall talking about that on more than one occasion?
>
> A. Yes. We talked about it often. Not -- I wouldn't say often, but it came up.

7

> Q. Okay. And I think you've already described sort of that sometimes he would talk about his pay; you would talk about the fact that you worked off the clock and didn't get paid, right?
>
> A. I think we tried to stay away from specific pay. Like, I didn't know how much he made. But we would definitely commiserate on our Patriot way.
>
> Q. Okay. And commiserating on your Patriot way involved talking about the fact that you worked off the clock without getting paid for it, right?
>
> A. That is correct.
>
> Q. Eric Herzog, when he testified a few minutes ago, testified that when you told him that you had worked off the clock without pay, that he instructed you to clock in all of your hours. Do you recall that testimony? . . .
>
> A. Oh. I do recall him testifying to that, yes.
>
> Q. And do you believe that that's true?
>
> A. No. I don't believe that statement ever happened.

Dkt. 75 at 123:16-124:21.

Based on the testimony of Plaintiff and his supervisor, Eric Herzog, the Court finds that White has met his burden to show by direct evidence that Patriot had actual knowledge he was performing overtime work for which he was not compensated.

**2. Constructive Knowledge**

Although Herzog's actual knowledge is sufficient to meet White's burden, the Court finds that Patriot also had constructive knowledge that White worked off-the-clock after he left the Patriot facility for the day. White sent emails after hours to Herzog; Herzog's supervisor, general manager Ted Turner; and CEO Parley Dixon. Plaintiff's Exhs. 11, 13, 17, 68, Dkt. 72-1 at 137, 141, 149, Dkt. 72-4 at 38. Herzog knew White sent emails from home. Dkt. 75 at 104:16-18. Mickey Swor, who supervised White during the last few months of his employment, talked and texted with White in the evenings and knew White worked after he left the facility. Dkt. 74 at 94:1-9, 217:7-11.

Patriot executives testified that Defendant did not know about any off-the-clock time. *Id.* at 62:25-63:5 (Dixon), 93:14-25 (Swor). Dixon testified that he did not know and did not inquire whether White was clocked in when he sent emails late at night. *Id.* at 42:9-43:24. Notwithstanding Dixon's lack of inquiry whether White was recording this time, the Court finds that Patriot had reason to know, and with reasonable diligence should have discovered, that he was working off-the-clock when he sent emails after hours to Patriot executives.

## V. Conclusions of Law

Based on the findings of fact above, the Court concludes that White has made his prima facie case for unpaid overtime compensation. The burden now shifts to Patriot "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Harvill*, 433 F.3d at 441 (quoting *Mt. Clemens*, 328 U.S. at 687-88).

### A. Patriot Has Not Shown White's Inference Is Unreasonable

The Court finds that Patriot has produced no evidence "to negative the reasonableness of the inference to be drawn" from White's evidence and testimony that he performed an estimated eight hours per week of overtime for which he did not seek compensation after leaving the Patriot facility. *Id.* Patriot cites cases standing for the proposition that "a plaintiff's unsubstantiated assertion that she worked overtime hours is insufficient to satisfy her evidentiary burden at the summary judgment stage." *Kirk v. Invesco, Ltd.*, No. H-15-833, 2016 WL 4394336, at *4 (S.D. Tex. Aug. 18, 2016), *aff'd*, 700 F. App'x 344 (5th Cir. 2017). In contrast, White offered at trial not an unsubstantiated assertion but uncontroverted testimony concerning his work schedule, along with examples of emails he sent after he clocked out, to the extent they were produced by Patriot. *Cf. Clark v. Centene Co. of Tex., L.P.*, 104 F. Supp. 3d 813, 827 (W.D. Tex. 2015) (finding

plaintiffs' testimony sufficient to meet their burden to show estimated average workweek as a matter of just and reasonable inference).

The Court finds that White has proven by a preponderance of the evidence that Patriot violated the FLSA's overtime wage requirements, and that Patriot did not satisfy its duty to count the time he continued to work after leaving its facility as hours worked. Accordingly, the Court may award damages to White even though the result may be only approximate. *Harvill*, 433 F.3d at 441 (quoting *Mt. Clemens*, 328 U.S. at 687-88).

## B. Amount of Overtime Compensation Due

White seeks an award of his unpaid time of $40,575.68 plus an equal amount in liquidated damages, for a total award of $81,151.36.

### 1. Patriot's Violation Was Willful

White was terminated on October 24, 2019, and filed his complaint on August 25, 2020. Under the statute of limitations for FLSA claims, he must bring suit within three years if Patriot's violation was willful; otherwise, the two-year statute of limitations applies. 29 U.S.C. § 255(a). The parties dispute the proper "look back" period.

A violation is willful when an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the FLSA. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The plaintiff bears the burden of establishing the defendant's willfulness. *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018). "In general, to show reckless disregard of the FLSA, an employee must show that the employer had some reason to know that its conduct violated the FLSA beyond mere ignorance of the law." *Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 564 (W.D. Tex. 2017). Evidence that a defendant was merely negligent regarding FLSA requirements is insufficient to show willfulness. *Id.* Nor does merely

unreasonable conduct suffice. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 360 F. Supp. 3d 571, 584 (W.D. Tex. 2019), *aff'd*, 946 F.3d 824 (5th Cir. 2020). Reckless disregard of the requirements of the FLSA "means failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

White argues that:

> Herzog's failure to investigate Mr. White's statement that he had worked off-the-clock, to ensure that Mr. White be paid for the hours he had worked off-the-clock, or to refer the issue to HR so that it could be investigated and Mr. White paid, establishes willfulness. Mr. White has further shown that the highest levels of management at Patriot, Dixon the CEO, and Mickey Swor, were both aware of the requirements found in the FLSA that employees be compensated for all hours worked, and yet provided no training or guidance to management, and allowed Mr. Herzog's failure to investigate or to ensure that Mr. White be compensated for his off-the-clock hours.

Dkt. 77 at 23-24 (citations omitted). Patriot responds that White has not met his burden, arguing in part that White never complained, "logged no less than 1000 hours of overtime in 2018 and 2019," and that Patriot "had no appreciation that Mr. White was not being paid for all overtime hours." Dkt. 80 at 17.

The Court finds that Patriot's duty to "make adequate inquiry" into whether White's after-hours work was in compliance with the FLSA was triggered, at a minimum, when White told Herzog that he did not report all his overtime. 5 C.F.R. § 551.104. White thus has met his burden to establish that Patriot showed reckless disregard for whether its conduct of permitting him to work off-the-clock was prohibited by the FLSA and therefore that its violation was willful.

2. **Amount of Overtime**

The Court adopts White's calculations showing the amount of overtime he is owed for the estimated eight hours he worked off-the-clock each week from August 25, 2017 – three years before he filed this action – until he was fired on October 24, 2019:

11

| Dates | Hourly rate | OT rate | Estimated OT hours | OT owed |
|---|---|---|---|---|
| 8/25/2017-3/4/2018 (27 weeks) | $29.25 | $43.88 | 8 hours/week | $9,478.08 |
| 3/5/2018-10/24/2019 (86 weeks) | $30.13 | $45.20 | 8 hours/week | $31,097.60 |
| Total | | | | $40,575.68 |

Dkt. 77 at 26.[2]

### 3. Liquidated Damages

Section 216(b) of the FLSA provides that any employer who violates the FLSA shall be liable to the employee in the amount of his unpaid overtime compensation "and in an additional equal amount as liquidated damages." Generally, the FLSA "mandates" that a plaintiff awarded in the amount of unpaid overtime compensation also be awarded liquidated damages in an equal amount. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (citing 29 U.S.C. § 216). But

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 [of the FLSA].

29 U.S.C. § 260.

Willfulness and good faith are separate inquiries. *Escribano v. Travis Cnty., Tex.*, No. 1:15-CV-331-RP, 2017 WL 326012, at *3 (W.D. Tex. Jan. 23, 2017). While "[t]he liquidated damages question is similar to the statute of limitations question," *Sanders v. Walkingspree USA, Ltd.*, No. 1:15-cv-500-RP, 2017 WL 1968860, at *4 (W.D. Tex. Feb. 17, 2017), it is the employer that has the "substantial burden" of demonstrating both good faith and reasonableness to avoid

---

[2] White's hourly rate increased from $29.25 to $30.13 on March 4, 2018.

assessment of liquidated damages. *Steele*, 826 F.3d at 246 (citation omitted); *see also Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979) (holding that, to avoid paying liquidated damages under § 260, an employer bears "a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict"); *Menefee v. N-Title, LLC*, 2021 WL 3413319, at *8 (W.D. Tex. July 9, 2021) (awarding liquidated damages). "The burden is a difficult one to meet; double damages are the norm, single damages the exception." *Berry v. Drive Casa, LLC*, No. 3:21-CV-0433-D, 2022 WL 605302, at *10 (N.D. Tex. Mar. 1, 2022) (cleaned up). The good faith defense is an exceptional one. *Landgrave v. ForTec Med., Inc.*, 581 F. Supp. 3d 804, 816 (W.D. Tex. 2022). To obtain the defense, the employer has "some duty to investigate potential liability under the FLSA," and ignorance cannot be the basis of a reasonable belief. *Barcellona*, 597 F.2d at 469. Even if the employer meets its burden, the decision whether to award liquidated damages is within the discretion of the trial court. *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003).

The Court holds that Patriot has not met its substantial burden to show that it satisfied its duty to investigate potential liability under the FLSA or that its actions as to White's uncompensated overtime were reasonable. Over the years that White managed its steel fabrication facility, Patriot added a night shift and quadrupled the number of workers he supervised. Patriot management knew White worked late at night, after he left the facility, and he told his supervisor that he did not record all his overtime.

Patriot submitted evidence that its employee handbook included a policy that when employees are away from the office they should call in their reportable time to their immediate supervisor as of July 2016, but did not establish that date; White testified that the provision was added after he

was fired. Dkt. 74 at 52:15-56:7, 150:20-25, 224:10-225:14; Dkt. 75 at 17:12-22:2. In any event, "[t]he mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13. It was objectively unreasonable for Patriot to "sit back and accept the benefits" of voluntary work after hours by White, an hourly employee, without either exercising its control to stop that work or compensating him for it. *Id.* Therefore, the Court in its discretion finds that White is entitled to compensation in the form of liquidated damages in an amount equal to his unpaid overtime compensation.

   4.  **Attorney Fees and Costs**

The FLSA states that in an action arising under the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

## VI. Conclusion

For these reasons, the Court awards Plaintiff Robert White $40,575.68 in uncompensated overtime and $40,575.68 in liquidated damages, for a total award of $81,151.36, as well as attorney's fees and costs.

The Court will enter a final judgment in a separate order.

**SIGNED** on June 20, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE